UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **KEITH A. ACKLEY** | : | **CIVIL ACTION NO. 2:15-cv-1188** |
| **VERSUS** | : | **UNASSIGNED DISTRICT JUDGE** |
| **HONEYWELL INTERNATIONAL, INC.** | : | **MAGISTRATE JUDGE KAY** |

**REPORT AND RECOMMENDATION**

Before the court are cross-motions for summary judgment filed by plaintiff Keith A. Ackley [doc. 72] and defendant Honeywell International, Inc. ("Honeywell") [doc. 66]. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636.

**I.**
**BACKGROUND**

This action arises from breach of contract and detrimental reliance claims brought by Ackley against his former employer, Honeywell, and relating to Honeywell's cancellation of stock options granted to Ackley. Doc. 1, att. 1.

From 1993 to 2009, Ackley was employed at Honeywell's office in Lake Charles, Louisiana, as an account manager. Doc. 66, att. 3, pp. 4–8. In July 2001 Ackley expressed job-related frustrations to his manager, Guy Grumbles, in a phone call and mentioned to him that he was considering looking for work elsewhere. *Id.* at 13–15. According to Ackley, Grumbles reassured him and said he would see what he could do. *Id.* at 15–16. Grumbles followed up a couple of weeks later, again by phone, and told Ackley that Honeywell wanted to offer him stock options in the amount of 1,000 shares in exchange for his continued employment. *Id.* at 16–21.

Ackley accepted, though he admitted later that he had only a basic understanding of stock options and that he never consulted anyone to learn more about them. *Id.* at 18–23.

Honeywell alleges that it then issued a document titled "Special Honeywell Stock Option Grant" ("Option Grant") and an accompanying stock option agreement ("Option Agreement"), pursuant to a 1993 stock plan ("Stock Plan") sponsored by Honeywell for its employees, to 2001 stock option recipients. *See* doc. 66, att. 7 (Option Grant); doc. 66, att. 8 (Option Agreement); doc. 66, att. 9 (Option Grant Process). The Option Grant provided that the option would vest in stages over the next three years. Doc. 66, att. 7. It pointed Ackley to investment firm Salomon Smith Barney for information on his stock options. *Id.* It also stated that, if Ackley left the company due to an involuntary termination, he must exercise any vested option by its normal expiration date or within three years of his separation, whichever was sooner. *Id.* Finally, the Option Grant instructed the recipient to read "[t]he enclosed Option Agreement" for "important information about your stock option grant," but specified that the recipient should keep the document for future reference and that a signed copy did not need to be returned. *Id.*

The Option Agreement provided that the option must be exercised by July 15, 2011. Doc. 66, att. 8; *see* doc. 66, att. 2, p. 4, ¶ 17 & n. 18. Ackley, however, maintains that Honeywell never provided the Agreement or a copy thereof to him. Doc. 72, att. 1, p. 1, ¶ 1 (Ackley statement of uncontested material facts); *see* doc. 66, att. 3, pp. 26–27 (Ackley deposition). Honeywell disputes this and notes that its records show that Option Agreements were distributed to recipients of 2001 option awards, a group which would have included Ackley, on or about July 27, 2001. Doc. 66, atts. 6 & 9; *see* doc. 80, att. 2, p. 1 (Honeywell response).

Ackley did not attempt to exercise his stock options during the time he was employed at Honeywell. From July 2001 until some time before March or April 2012, he received periodic

statements from Honeywell about his stock options which stated that he had 1,000 shares outstanding and describing the hypothetical pre-tax gain of those shares. Doc. 1, att. 1, p. 5, ¶ 9; doc. 66, att. 3, pp. 33–34. He remained employed at Honeywell until he was involuntarily terminated on April 29, 2009, as part of a reduction in force. Doc. 66, att. 3, pp. 8–9; doc. 66, att. 12. On that date Ackley was provided with an employment separation agreement and release ("Separation Agreement"), which he signed on June 10, 2009. Doc. 66, att. 12, pp. 1–7. That agreement specified that Ackley released all claims against Honeywell arising out of his employment or the termination thereof, including those for incentive compensation awards. *Id.* at 3. A four-page exhibit to the agreement provided a summary of employee benefits and noted that stock options must be exercised within "the lesser of (i) three years from [his] Termination of Employment Date, or (ii) the full remaining option term." *Id.* at 54.

In late March 2012, after noticing that he had not received any documentation relating to his stock options in some time, Ackley first made inquiries to Honeywell in an effort to exercise his stock options by calling Honeywell's human resources line. Doc. 64, p. 3, ¶ 10; doc. 66, att. 3, pp. 31–32. Honeywell compensation analyst Steven Foglyano responded via phone and then followed up via email on April 9, 2012. Doc. 66, att. 3, pp. 32–33; doc. 66, att. 13. He informed Ackley that the stock options had expired on July 15, 2011, pursuant to the Option Agreement.[1] Doc. 66, att. 13.

---

[1] On May 1, 2012, Ackley also received an email from Honeywell stock plan administration manager, stating that, as a "Band 3" employee at the time of the grant, Ackley would have been ineligible to receive stock options and that in 2002 Honeywell had identified several employees who had erroneously been offered stock options. Doc. 72, att. 16. Even though Ackley was not among the employees identified, Ventre stated that she believed that he fell into that category. *Id.* Ackley states that he was motivated to file suit by the contradictory information offered by Ventre and Foglyano. Doc. 64, p. 4, ¶ 14. Although Ackley argues under these motions that both bases of denial were invalid, Honeywell only argues that Ackley's attempt to exercise his benefits was properly denied as time-barred. Accordingly, we only consider this basis for denial.

Ackley states that he continued pursuing his stock options until his efforts were finally rejected by Honeywell in a letter dated October 31, 2014. Doc. 64, pp. 4–6, ¶¶ 14–17. Ackley then filed suit against Honeywell in the 14th Judicial District Court, Calcasieu Parish, Louisiana, on March 10, 2015, seeking to recover based on claims of breach of contract and detrimental reliance. Doc. 1, att. 1, pp. 4–10. Honeywell removed the suit to this court on the basis of federal diversity jurisdiction, 28 U.S.C. § 1332. Doc. 1. Since that time, Ackley has twice amended his complaint and Honeywell has also filed a counterclaim alleging that Ackley breached his separation agreement by maintaining the instant suit. Docs. 16, 27, 64. The matter is now before the court on cross-motions for summary judgment, which have been fully briefed and are ripe for review.

## II.
### SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2511 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 106 S.Ct. at 2511 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 120 S.Ct. 2097, 2110 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### III.
#### APPLICATION

Honeywell moves for summary judgment, arguing that (1) Ackley's claims fail under any possible breach of contract theory and the release provision of the Separation Agreement, (2) Ackley's equitable arguments fail as a matter of law, and (3) Honeywell is entitled to damages resulting from Ackley's breach of the separation agreement in filing this suit. Doc. 66, att. 1. Ackley opposes this motion and moves separately for summary judgment, arguing that he is entitled to judgment as a matter of law on his breach of contract and detrimental reliance claims and that Honeywell's counter-claim should be dismissed. Doc. 72, att. 2; *see* doc. 73, att. 2 (Ackley opposition to Honeywell motion, which is identical to Ackley's own motion).

A. *Breach of contract claims*

Honeywell maintains that it did not breach any contractual provision of the Stock Plan or Option Agreement by regarding Ackley's stock options as expired, and that Ackley's claimed verbal agreement for stock options is unenforceable under applicable state law. Doc. 66, att. 1, pp. 18–22. It also asserts that, by signing the Separation Agreement, Ackley released any claims relating to the stock option. *Id.* at 22–24 Ackley maintains that he and Honeywell "entered into a valid contract" through Ackley's promise to remain employed at Honeywell and Honeywell's

promise to grant stock options, which Honeywell then breached by refusing to allow Ackley to exercise his stock options in March and April of 2012. Doc. 72, att. 2, p. 13. Ackley does not address Honeywell's contention that any verbal contract for stock options based on his conversations with Grumbles would be invalid.

### 1. *Applicable state law*

Honeywell asserts that, because it is a Delaware corporation, Delaware law should govern the interpretation of the option agreement and the enforceability of any verbal contract between the parties. Doc. 66, att. 1, pp. 17–18, 20 & n. 69. Under *Erie Railroad Co. v. Tompkins*, 58 S.Ct. 817 (1938), a federal court sitting in diversity jurisdiction applies the substantive law of the forum state. *See Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991). Accordingly, the federal court "must decide whether the case, under the teachings of *Erie*, involves issues which are substantive," with "substantive" meaning that the applicable state law "would significantly affect the outcome of the suit." *Maryland Cas. Co. v. Williams*, 377 F.2d 389, 393 n. 1 (5th Cir. 1967). If the court determines that it must apply state law and a conflict of laws problem arises in the case, the court looks to the conflict of laws rules of the forum state. *Id.*; *Morris v. LTV Corp.*, 725 F.2d 1024, 1027 (5th Cir. 1984).

Honeywell's argument under this claim relates to the enforceability of verbal stock option offers. It is thus a substantive issue, and so the court must determine whether there is an actual conflict between Louisiana and Delaware law on the applicable issues. *Schneider Nat'l Transp. v. Ford Motor Co.*, 280 F.3d 532, 536 (5th Cir. 2002). "If the laws of the states do not conflict, then no choice-of-law analysis is necessary." *Id.* (quoting *W.R. Grace and Co. v. Cont'l Cas. Co.*, 896 F.2d 865, 874 (5th Cir. 1990)). In such a case, the court simply applies the law of the forum state.

*Id.*; *see, e.g.*, *Williams v. Chesapeake Oper., Inc.*, 2014 WL 2718713, at *2–*4 (W.D. La. Jun. 16, 2014).

Under Louisiana law, the essential elements of a breach of contract claim are defined as (1) "the obligor's undertaking of an obligation to perform," (2) the obligor's failure to perform the obligation (the breach), and (3) resulting damages to the obligee. *Boudreaux v. Flagstar Bank FSB*, 623 Fed. App'x 235, 237 (5th Cir. 2015) (internal citations omitted). Under Delaware law, the elements are (1) existence of a contractual obligation, (2) breach of that obligation by the defendant, and (3) resulting damage to the plaintiff. *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 140 (Del. Ch. 2003). There is no meaningful difference between these tests and Honeywell shows no conflict between them. Accordingly, the court need not undertake a choice of law analysis and will instead apply Louisiana law, as the law of the forum state, in addressing this issue.

As for the enforceability of a verbal stock option agreement, Delaware law has addressed the issue more particularly. Louisiana law requires that all option contracts must set forth a stipulated time for expiration of the option. La. Civ. Code art. 2620. Accordingly, an option for a perpetual or indefinite term is null. *Id.* at cmt. (c); *see, e.g.*, *Becker and Assoc., Inc. v. Lou-Ark Equipment Rentals, Inc.*, 331 So.2d 474 (La. 1976). Delaware law, on the other hand, expressly provides that verbal stock option agreements are invalid, because the applicable code articles require approval of a stock option by the corporation's board of directors and a written instrument evidencing the agreement. 8 Del. C. §§ 151–53, 157, 161; *see Grimes v. Alteon, Inc.*, 804 A.2d 256, 266 (Del. 2002). Because these provisions are both statutorily required forms of which the conversations with Grumbles fell short, they do not conflict and this court instead uses Louisiana law as that of the forum state.

### *2. Application*

As Honeywell notes, the breach of contract claim fails as to the Option Agreement because Ackley does not identify any term of any agreement breached by Honeywell. Additionally, the verbal agreement with Grumbles was not a contract and thus could not have created contractual obligations. Ackley does not contest Honeywell's characterization that Grumbles "verbally offered [him] **options** on 1,000 shares of Honeywell stock, pursuant to an incentive stock plan sponsored by Honeywell for its employees." *E.g.*, doc. 73, att. 1, p. 2, ¶ 6 (emphasis added). Ackley maintains that his attempt to exercise the option was made within three years of termination, and that the contract term limiting exercise to that date or the express expiration date of July 15, 2011, did not apply because he did not receive a copy of the Option Agreement. Doc. 72, att. 2, p. 6. However, he does not allege that the three-years-from-termination date or any other stipulated term arose at any part in his verbal negotiations or explain how it otherwise became incorporated into that agreement.[2] As noted above, Louisiana law requires that an option contract set a definite time for the expiration of the option. La. Civ. C. art. 2620 & cmt. (c); *see, e.g.*, *Becker*, 331 So.2d at 476. No such time is provided in the verbal agreement as alleged, and so it is null and void. In the absence of any valid contract, the court need not consider at this point whether Ackley released this claim. Accordingly, Ackley cannot prevail on a breach of contract claim and Honeywell is entitled to judgment as a matter of law.

---

[2] To the extent that Ackley would argue that such a term was imposed through his separation agreement, the reference to the term therein also referenced the Stock Plan and expressly stated that the option would expire at the earlier of "(i) three years from your Termination of Employment Date, or (ii) the full remaining option term." Doc. 66, att. 12, p. 54. Accordingly, the term asserted by Honeywell was incorporated by reference to that agreement. In the event Ackley were to show that the Separation Agreement amended the verbal agreement, he could not demonstrate a breach under the express terms of that provision.

### B. *Detrimental reliance claim*

Detrimental reliance is an equitable doctrine "designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence." *In re Ark-La-Tex Timber Co., Inc.*, 482 F.3d 319, 334 (5th Cir. 2007). The doctrine is disfavored under Louisiana law, and Louisiana jurisprudence requires that such claims "be examined carefully and strictly." *Id.*

The elements of a detrimental reliance claim are laid out in Article 1967 of the Louisiana Civil Code, which provides in relevant part that

> [a] party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely to on it to his detriment and the other party was reasonable in so relying.

La. Civ. Code art. 1967. Such a claim thus requires (1) a representation, (2) justifiable reliance on the representation, and (3) a change in position, to the plaintiff's detriment, as a result of the reliance. *Drs. Bethea, Moustoukas and Weaver LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 403 (5th Cir. 2004). Even though the plaintiff need not show that the defendant's representations amounted to an enforceable contract, he must still show that his reliance on these representations was reasonable. *Newport Ltd. v. Sears, Roebuck & Co.*, 6 F.3d 1058, 1069 (5th Cir. 1993). Whether a plaintiff's reliance on a promise was reasonable is generally a fact-bound determination. *Bethea*, 376 F.3d at 403.

Honeywell maintains that Ackley's claimed reliance – specifically, his apparent belief that the stock option had no expiration term or that he had at least eleven years to exercise or even inquire about his stock options – was unreasonable and not induced by any representation on Honeywell's part. Doc. 66, att. 1, pp. 24–28. Specifically, it maintains that Ackley is experienced in complex commercial transactions and personal investment and that this experience rendered

Ackley's belief that there was no expiration date for his options and his failure to investigate his options before expiration of the ten-year term unreasonable. *Id.* It also asserts that Ackley cannot prove that he changed position in reliance on these representations, merely by remaining employed at Honeywell. *Id.* at 28. Ackley insists that his reliance and change in position, to the extent he remained employed at Honeywell from 2001 until 2009 under the apparent belief that he had indefinite stock options at that company, was reasonable. Doc. 72, att. 2, pp. 12–13. He also maintains that his decision not to seek employment elsewhere amounts to a change in position, to his detriment, in reliance on Honeywell's representation. *Id.*

Under Louisiana law, "it has long been the rule that equity will not lie where a positive legal requirement, not adhered to, exists." *Morris v. Friedman*, 663 So.2d 19, 25 (La. 1995). Accordingly, "[e]quitable considerations and estoppel cannot be permitted to prevail when in conflict with positive written law." *Id.* (quoting *Palermo Land Co. v. Planning Comm'n of Calcasieu Par.*, 561 So.2d 482, 488 (La. 1990)). Courts considering detrimental reliance claims under Article 1967 have held that it may not be used to trump statutory contract requirements. *See, e.g.*, *John W. Stone Oil Distrib., LLC v. River Oaks Contractors & Developers, Inc.*, 986 So.2d 103, 107–10 (La. Ct. App. 5th Cir.), *writ denied*, 992 So.2d 992 (La. 2008); *Acurio v. Cage*, __ So.3d ____, 2018 WL 4609977, at *13–*14 (La. Ct. App. 2d Cir. Sep. 26, 2018). In *Stone*, for example, the plaintiff sued to enforce an oral agreement by the defendant to sell immovable property to the plaintiff. 986 So.2d at 107–10. The court rejected the detrimental reliance claim, observing that the oral agreement fell short of requirements under Louisiana Civil Code Articles 2439 and 2440 that such contracts be in writing and that they specify a price.[3] *Id.* Here, as shown

---

[3] State circuit courts are split on whether they also mention the plaintiff's experience/awareness of such positive legal requirements. *Compare Stone*, supra, 986 So.2d at 109, *and E. Tangipahoa Dev. Co., LLC v. Bedico Junction, LLC*, 5 So.3d 238, 247 (La. Ct. App. 1st Cir. 2008); *with Acurio*, supra, 2018 WL 4609977 at *13–*14, *and Rumore v. Rodrigue*, 2015 WL 9435213, at *4 n. 13 (La. Ct. App. 1st Cir. Dec. 23, 2015). This court does not believe that such

above, Grumbles's representations did not meet form requirements under Delaware law because it was not in writing or under Louisiana law because no term was specified. Accordingly, Ackley cannot claim detrimental reliance on the existence of stock options based on his conversation with Grumbles.

Even without the agreement's form requirements, subsequent events also rendered Ackley's belief in the terms of the agreement formed – based in particular on Grumbles's failure to mention an expiration date – unreasonable. Honeywell has set forth the following uncontested facts relating to Ackley's experience and investigation of the stock options: (1) Ackley is a college-educated business executive who "routinely dealt with technical terms of contracts, projects, and proposals" over the course of his employment at Honeywell; (2) Ackley has many years of experience in managing his personal investments in various types of securities and "routinely consulted with several financial advisors" regarding those investments; (3) Ackley never sought advice from anyone on the terms of his stock options, requested or reviewed any information outlining the terms of the stock options, and never attempted to discern the value of the options; and (4) Ackley first made an inquiry to Honeywell about exercising his stock options in March or April 2012, after noticing that he had not seen the "Stock Option Plan" category on his online Honeywell Savings account in a while. Doc. 66, att. 2. Ackley does not contest these statements, and so they are deemed admitted under Local Rule 56.2. *See* doc. 73, att. 1. Ackley also contests that the expiration date was readily discoverable through Honeywell's website or that he was informed that he should look to the Salomon Smith Barney website for more information on his

---

findings are necessary under Louisiana jurisprudence to the rule cited above. In the event, however, that such a finding is necessary to the court's decision on the application of detrimental reliance, we note Ackley's admitted status as an active investor who consulted with professionals in managing various accounts and find that his knowledge made it unreasonable for him to believe that the terms of his stock option offer would be confined to what he was told over the phone by a company representative.

stock options. *Id.* at 5–6. Instead, he maintains that the only options data Honeywell made available to him was a periodic statement about the value of the stock options on certain dates. *Id.*

Neither party, however, disputes that Ackley signed the Separation Agreement and that the four-page exhibit described above was provided to him along with the agreement. As noted above, Ackley still failed to investigate or attempt to exercise his options until 2012. His own admissions show that he was readily able to discover the termination date at that time after contacting Honeywell's Human Resources department.

The undisputed facts provide an insufficient basis for the court to determine the reasonableness of Ackley's reliance on the verbal stock option offer, with no specified expiration term, up until the time he signed the Separation Agreement in June 2009. At the time he signed that document, however, Ackley had notice of the potential existence of a term for his stock options. Even without a determination of the extent to which his personal and professional experience ranked him above the average employee in understanding his benefits, any belief he continued to hold that the options had no termination date then became unreasonable in light of the likelihood that his separation could impact his options and his admitted failure to investigate the existence of a term or understand that provision of the separation agreement.[4] Furthermore, the 2011 termination date did not impede his ability to exercise his options while, he maintains, he was detrimentally relying on the existence of the options by remaining employed at Honeywell. After receiving notice through the Separation Agreement in June 2009 of a potential option expiration date that could arrive before the other deadline mentioned, Ackley could have and should have investigated and discovered the exact date of expiration in time to exercise his stock

---

[4] Ackley stated that he had over a month to review the Separation Agreement and that he read the whole thing. Doc. 66, att. 3, pp. 44–45. He admitted, however, that he did not consult an attorney, accountant, or financial advisor about the terms of the agreement and implied that he may not have understood some of the terms because he had just been terminated from a longtime position and "was probably kind of in a state of shock." *Id.* at 45.

options. Accordingly, the claim for detrimental reliance fails based on the undisputed facts of the case and the court need not consider whether Ackley actually changed position to his detriment by remaining employed at Honeywell.

### C. *Separation Agreement breach counterclaim*

Finally, the parties move for summary judgment on Honeywell's counterclaim. Honeywell asserts that Ackley breached the Separation Agreement by filing suit, and that it is entitled to repayment of the severance benefits Ackley received as part of that agreement; a judgment of costs, expenses, and attorney fees; and contract damages, lost profits, and punitive damages under specific provisions of the Separation Agreement and Louisiana law. Doc. 27, p. 11.

The Separation Agreement provides:

> In exchange for the Consideration, you [the employee] do hereby waive and do hereby release, knowingly and willingly, Honeywell International Inc. . . . from any and all claims of any nature whatsoever you have arising out of your employment and/or the termination of your employment with [Honeywell], known or unknown . . . .
> . . . . All claims, including contingent claims, for incentive compensation awards under any Honeywell Group plan or payroll practice . . . are specifically subject to this release of claims.

Doc. 66, att. 12, p. 3. In return, Honeywell promised Ackley severance pay covering 15 weeks and three days of salary. *Id.* at 1. The Separation Agreement was delivered to Ackley on or about April 29, 2009, and signed by him on June 10, 2009. *Id.* at 1, 7. Ackley does not dispute that the severance payments were made as promised. Doc. 73, att. 1, p. 6, ¶ 29. Accordingly, Honeywell maintains that he breached the Separation Agreement through the filing of this suit.

Honeywell moved to dismiss this suit for failure to state a claim shortly after the case was removed to this court. Docs. 7, 8. It relied in part on the above provision in the Separation Agreement, arguing that Ackley had released all claims against it. Doc. 8, pp. 10–11. The court rejected this argument, reasoning that Ackley's claims relating to the stock options did not arise

-13-

until "he attempted exercise the stock option and was prevented from doing so by Honeywell." *Ackley v. Honeywell Int'l, Inc.*, 2015 WL 4911852, at *2 (W.D. La. Aug. 17, 2015). Accordingly, it determined, "[t]here was nothing actionable at the time of termination [and] so there was no release at that time." *Id.* Further, it noted, the fact that employees could exercise stock options for up to three years after termination contradicted any such reading of the release provision, because Honeywell could then refuse to allow all terminated employees to exercise stock options after the date of termination and argue that any claims against that action had been released. *Id.*

The "law of the case" doctrine states that a court follow its prior final decisions in a case as the law of that case, except in a few narrow exceptions. *In re England*, 153 F.3d 232, 235 (5th Cir. 1998). It applies when the court decides upon a rule of law and that rule governs the same issues in ensuing stages of the same case. *In re Ramey*, 2006 WL 2818987, at *4 (S.D. Tex. Sep. 29, 2006). It may be used even when the judge who rendered the earlier interlocutory decision is no longer assigned to the matter. *See, e.g., id.*; *Southern Snow Mfg. Co., Inc. v. SnoWizard Holdings, Inc.*, 921 F.Supp.2d 548, 563 (E.D. La. 2013). The doctrine "encompasses those decisions 'decided by necessary implication as well as those decided explicitly.'" *England*, 153 F.3d at 235 (quoting *Alberti v. Klevenhagen*, 46 F.3d 1347, 1351 n. 1 (5th Cir. 1995)). A matter is decided by necessary implication if it was fully briefed to the court and serves as a "necessary predicate[] to the court's ability to address the issue or issues specifically discussed." *Alpha/Omega Ins. Svcs., Inc. v. Prudential Ins. Co. of America*, 272 F.3d 276, 280 (5th Cir. 2001) (cleaned up).

The law of the case doctrine is a prudential rule that directs the court's discretion rather than imposing any limits on the court's power. *In re Pilgrim's Pride Corp.*, 442 B.R. 522, 531 (N.D. Tex. 2010). Accordingly, a district court is not precluded under this doctrine from

reconsidering its previous rulings on interlocutory motions. *Lonatro v. Orleans Levee Dist.*, 809 F.Supp.2d 512, 518 (E.D. La. 2011) (citing *Louisiana v. Guidry*, 489 F.3d 692, 698 (5th Cir. 2007)). A court should revisit its own ruling under certain narrow exceptions, including where the evidence presented at a subsequent trial was substantially different, a controlling decision applicable to the issues has since been rendered, or where the prior decision "was clearly erroneous and would work a manifest injustice." *Royal Ins. Co. v. Quinn-L Capital Corp.*, 3 F.3d 877, 880 (5th Cir. 1993). Nevertheless, the doctrine serves the important function of "promot[ing] the finality and efficiency of the judicial process by protecting against the agitation of settled issues." *United States v. O'Keefe*, 169 F.3d 281, 283 (5th Cir. 1999) (internal quotations omitted). A court may therefore decline to apply the doctrine and review its own prior decision in a case, but should be loath to do so "in the absence of extraordinary circumstances." *Id.*

In this matter, Honeywell fully briefed its claim on the Motion to Dismiss. The court's decision, that the Separation Agreement's release provision was ineffective against Ackley's claims relating to the post-termination denial of his stock options, reflects a ruling by necessary implication that Ackley did not breach the applicable provision by bringing this suit. Honeywell now insists now that Ackley's recent filings show that "the principal basis for his complaint is Honeywell's failure to notify him of the terms of the 2001 stock option," and that this claim was therefore covered by the release in his Separation Agreement. Doc. 79, pp. 12–13. As the court previously ruled, however, Ackley had not attempted to exercise his stock options at the time of his 2009 termination. Indeed, his term did not expire until 2011. Accordingly, Ackley shows no manifest error to the court's determination that the release did not apply to the claims raised in this suit. That determination stands as the law of the case and precludes a finding that Ackley breached

the Separation Agreement by bringing suit. Accordingly, Ackley is entitled to judgment as a matter of law and the counterclaim must be dismissed.

## IV.
### CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that both motions for summary judgment [docs. 66, 72] be **GRANTED IN PART** and **DENIED IN PART** as described above and that all claims in this matter be **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE AND SIGNED in Chambers this 8th day of January, 2019.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE